STATE OF NEBRASKA, APPELLEE, v. ERNEST H.
BRITT, III, APPELLANT.

264 N. W. 2d 670

Filed April 12, 1978.   No. 41589.

Paul E. Watts, Gerald E. Moran, Robert C. Sigler,
and Julianne M. Dunn, for appellant.

Paul L. Douglas, Attorney General, and Jerold V.
Fennell, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

Ernest H. Britt, III, defendant and appellant herein, was charged with possession of cocaine in violation of section 28-4,125 (3), R. R. S. 1943; and with carrying a concealed weapon in violation of section 28-1001, R. R. S. 1943. Prior to trial the defendant moved to suppress evidence seized by police officers acting pursuant to a search warrant on the ground that the officers had not supplied adequate information to the municipal court to permit the issuance of a warrant. This motion was overruled. A jury found the defendant guilty as charged, and the trial court overruled his motions for a directed verdict. Defendant has now appealed to this court, contending that (1) the evidence was insufficient to establish beyond a reasonable doubt that he was in actual or constructive possession of cocaine; (2) the motion to suppress should have been sustained because the affidavit and application for the search warrant were constitutionally defective; and (3) the trial court should have dismissed the charge of carrying a concealed weapon because defendant fell within a statutory exception found in section 28-1001, R. R. S. 1943, and was not carrying a weapon on or about his person. We affirm the judgment of the District Court.

The relevant facts are as follows. Defendant had been under surveillance by Omaha police officers for suspected dealings in controlled substances. On December 7, 1976, police officers applied for a search warrant to search 4001 Wirt Street, defendant's alleged residence, for cocaine. In support of the application, the officers stated, in relevant part, that they had made a "controlled buy" of cocaine from the residence within the last 72 hours; and that an informant had been in the residence within the last 72 hours and had advised police that the defend-

ant was selling cocaine from the residence, and that he had seen what appeared to be cocaine. The officers stated that the informant "has proven his reliability in the past by giving Officers of the Vice & Narcotics Unit information that has resulted in the arrests of partys (sic) for the possession of controlled substances and the confiscation of illegly (sic) possessed controlled substances." The testimony at the suppression hearing indicated that the "controlled buy" was made by use of an informant, whom the police kept under observation while he entered the residence and returned with cocaine. The informant who made the "controlled buy" was not the same one who provided police with the other information set forth in the application for a search warrant.

As the police approached the residence to serve the "no-knock" warrant at 11:45 a.m., the defendant appeared at the front door with a gym bag in his hand. The defendant observed the officers, and hastily closed the door to the house. The police followed, and found the defendant flushing a toilet. A search of the house disclosed plastic tubes and a small film container in which residue of cocaine was found. One of the plastic tubes was on top of an air conditioner in the living room. The film container was on the kitchen table. Police also discovered telephone bills and a medical bill addressed to the defendant at 4001 Wirt Street, the residence being searched. An officer discovered a loaded revolver in a bag which defendant was carrying when first seen by police officers as he was exiting the house.

The residence at 4001 Wirt Street is owned by one Glenette Allison, defendant's girl friend. Both she and the defendant acknowledged that the defendant stayed at the residence 2 or 3 nights a week. Allison stated that the phone was in defendant's name because a phone in her name was disconnected when bills were not promptly paid. Allison stated that the

defendant, to her knowledge, did not use or possess cocaine because he did not like the drug. Both the defendant and Allison stated that his residence was with his mother, and not at 4001 Wirt Street. Defendant's mother and sister also so testified. The defendant denied that the cocaine found by police was his. Finally, defendant stated that he had the gun, found in the gym bag, because he was carrying a large amount of money to be used for payment of bills and to be deposited in the bank.

Defendant contends that the affidavit and application for the search warrant were defective because "the informant's reliability is not sufficiently established nor is it clear how he knows what he knows in this particular situation." He further argues that the statement as to the "controlled buy" was discredited at the hearing on the motion to suppress because the buy was made by an informant, and not by police officers. These arguments are unpersuasive.

The tests for determining the validity of an affidavit to obtain a search warrant based on an informant's information are set forth in Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964): "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable.' " Although there is nothing in the affidavit in this case concerning the reliability of the informant who made the "controlled buy," there is with respect to the informant who provided the other information to the police. In State v. Davis, 199 Neb. 165, 256 N. W. 2d 678 (1977), an affidavit containing statements like those in the present

affidavit concerning the information provided by, and the reliability of, the second informant were found to meet the tests set forth in Aguilar v. Texas, *supra*. In the present case, the statements in the affidavit with respect to the second informant support the issuance of a warrant, even ignoring the portion of the affidavit concerning the "controlled buy" and the first informant. The underlying circumstances from which the officers concluded that the second informant was reliable were set forth in the affidavit. The affidavit was clearly sufficient, and defendant's contentions to the contrary are without merit. State v. Davis, *supra*.

Defendant next contends that the evidence was not sufficient to show that he had actual or constructive possession of the cocaine. "The rule is that evidence the accused had physical or constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession." State v. Foster, 196 Neb. 332, 242 N. W. 2d 876 (1976). We have held that proof of guilty knowledge may be made by evidence of acts, declarations, or conduct of the accused from which the inference may be fairly drawn that he knew of the existence and nature of the narcotics at the place where they were found, but mere presence at a place where a narcotic drug is found is not sufficient. State v. Faircloth, 181 Neb. 333, 148 N. W. 2d 187 (1967); State v. Bartlett, 194 Neb. 502, 233 N. W. 2d 904 (1975). Ordinarily, when narcotics or contraband materials are found on a defendant's premises or in an automobile possessed and operated by him, the evidence of unlawful possession is deemed sufficient to sustain a conviction in the absence of any other reasonable explanation for its presence. State v. Rys, 186 Neb. 341, 183 N. W. 2d 253 (1971). The jury in this case was instructed in accordance with these principles.

We believe that the evidence in this case was suffi-

cient to permit the jury to conclude beyond a reasonable doubt that the defendant was in actual or constructive possession of the cocaine with the requisite guilty knowledge. The defendant was admittedly living at the residence where the cocaine was found at least 2 or 3 nights per week. The telephone was in his name, and he received mail there. The containers in which cocaine was found were in plain view in the living room and the kitchen. Although the defendant did not own the residence, legal ownership is not the test. On these facts we conclude that the evidence, obviously believed by the jury, was sufficient to establish the link between the defendant and the cocaine. See State v. Foster, *supra.*

Defendant argues that his conviction for carrying a concealed weapon should be reversed because he falls within a statutory exception set forth in section 28-1001, R. R. S. 1943. That section prohibits one from carrying a weapon "concealed on or about his person." That section provides, however, that "if it shall be proved from the testimony * * * that the accused was, at the time carrying any weapon or weapons as aforesaid, *engaged in any lawful business, calling or employment, and the circumstances in which such person was placed at the time aforesaid were such as to justify a prudent person in carrying the weapon or weapons aforesaid, for the defense of his person, property or family,* the accused shall be acquitted or discharged." (Emphasis supplied.) The term "calling" is defined as "The activity in which one customarily engages as a vocation or profession." Webster's Third New International Dictionary.

In this case the defendant stated that he was carrying the gun in the gym bag because he needed it for protection. Defendant stated that he had $100 in cash and a $150 money order on the day in question, and that he needed protection while he paid bills and deposited the funds in the bank. Defendant also

stated that he was in a high-crime area, and needed protection for that reason.

Similar arguments were raised, and rejected, in State v. Goodwin, 184 Neb. 537, 169 N. W. 2d 270 (1969), in which we noted that the statutory exception applies only when one is engaged in a lawful business, calling, or employment, and when the circumstances are such as to justify a prudent person in carrying the weapon for defense of his person, property, or family. The evidence in this case was clearly sufficient to permit the jury to conclude that the statutory exception did not apply to the defendant, as defendant was not engaged in a "business, calling, or employment."

Defendant's final contention is that the revolver, which was in a zipped gym bag carried by the defendant, was not concealed "on or about his person." He relies on State v. Goodwin, *supra,* in which we stated that the words "concealed on or about the person" mean "concealed in such close proximity * * * as to be convenient of access and within immediate physical reach." In that case we determined that a pistol locked in the glove compartment of an automobile was concealed on or about the person of the driver.

Although there is some authority to the contrary, the rule in a majority of jurisdictions is that the defendant's carrying of a weapon in a bag, bundle, traveling bag, or other similar article which is held in the hand or placed under the arm constitutes concealment of a weapon on or about his person. See, Annotation, 43 A. L. R. 2d, "Offense of Carrying Concealed Weapon as Affected by Manner of Carrying or Place of Concealment," 492, § 12 (a), at p. 534; 79 Am. Jur. 2d, Weapons and Firearms, § 11 at p. 16. In People v. Foster, 32 Ill. App. 2d 462, 178 N. E. 2d 402 (1961), the court held that carrying a gun in an athletic type zipper bag constituted concealment of a weapon on or about the defendant's person. Courts

have also held that carrying a weapon in a briefcase constitutes carrying a concealed weapon on or about one's person. See, Rogers v. State, 336 So. 2d 1233 (Fla. App., 1976), cert. dismissed, 348 So. 2d 952 (Fla., 1977); People v. Pugach, 15 N. Y. 2d 65, 255 N. Y. S. 2d 833, 204 N. E. 2d 176 (1964), cert. denied, 380 U. S. 936, 85 S. Ct. 946, 13 L. Ed. 2d 823 (1965). Under these authorities, as well as State v. Goodwin, *supra,* it is apparent that the evidence the defendant was carrying a revolver in a gym bag was sufficient to permit the jury to conclude that he was carrying a concealed weapon "on or about his person."

At oral argument in this case, counsel for the defendant raised other issues not argued in his brief. On appeal to this court, however, this court considers only those errors assigned and argued in an appellant's brief. State v. Downtown Books, Inc., 196 Neb. 473, 244 N. W. 2d 63 (1976); Rule 8a 2 (3), Revised Rules of the Supreme Court of Nebraska, 1977. We have reviewed the assignments of error argued in defendant's brief, and find them to be without merit. Therefore the judgment of the District Court is affirmed.

AFFIRMED.