STATE OF NEBRASKA, APPELLEE, v. JESSIE BROWN,
APPELLANT.
237 N. W. 2d 861

Filed January 29, 1976. No. 40110.

Paul E. Watts, J. Joseph McQuillan, Gerald E. Moran, and Robert C. Sigler, for appellant.

Paul L. Douglas, Attorney General, and Paul W. Snyder, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

Defendant was convicted by a jury of possession of a controlled substance with intent to distribute or deliver. There are three assignments of error: First, that the court failed to suppress evidence obtained as the result of a wrongful stop, detention, and search; second, insufficiency of the evidence; and third, the court erroneously resubmitted the case to the jury to correct a

verdict. We affirm the judgment of the District Court.

At about 10 a.m. on October 10, 1974, a police officer received information from an informant known to him, and who had previously supplied him with reliable information, to the effect that at about noon that day the defendant would deliver a controlled substance in the vicinity of 24th and Franklin Streets in Omaha, Nebraska. The officer maintained a watch in the area and at 11:30 a.m. the defendant appeared driving a pickup truck. Defendant was stopped by the officer who then observed marijuana on the seat. On further search, marijuana was found under the seat and a package containing a mixture including heroin was found in the bed of the pickup, together with a syringe and cap. Defendant was arrested when the first marijuana was found.

The jury returned two verdicts, one guilty of possession of a controlled substance with intent to distribute, and the other, guilty of the included offense of possession. The court resubmitted the case to the jury with a supplemental instruction to the effect that if it found the defendant guilty of possession with an intent to distribute, it was not necessary to find him guilty of simple possession. The jury then returned only the verdict of guilty of possession with intent to distribute.

The evidence indicates that defendant had a 12½-ounce bag of a mixture containing about 60 percent Epsom salts, 12 percent Dorman, 26 percent Hide, and .02 percent heroin. Of the 356 grams of material, about 6 grams were heroin. Street-grade heroin usually contains 2 to 3 percent heroin. The Hide is a mice and rat killer. Defendant testified that he made the mixture himself the morning he was apprehended but denied putting heroin in it. He claimed he had a job cleaning up some apartments that day and two others were going to help him to clean and get rid of mice and insects. A vacuum cleaner was in the pickup. Neither the defendant's alleged helpers nor employer testified.

Defendant's evidence disclosed that he was not a

heroin user; that at one time he had been in the drug-distributing business for 3 or 4 months; and that he had a prior conviction of possession of a controlled substance with intent to distribute it.

The circumstantial evidence regarding intent to distribute the substance is not overwhelming; yet the factors affecting the jury verdict appear clear. The defendant's story regarding the intended use of the mixture was entirely uncorroborated notwithstanding his reference to an employer and to two helpers. According to his own story, no one could have added the heroin to the mixture except himself unless it was done by the arresting officer and there appears to have been little opportunity for that. The defendant was not a heroin user and would not have possessed it for that purpose. He had a previous conviction bearing on the question of intent. No logical reason appears for adding heroin to an insecticide or rodent killer. On the contrary, the mixture only succeeded in diluting the heroin very materially. Also, he admitted he had distributed controlled substances in the past. "In determining the sufficiency of the evidence to sustain the conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausability of explanations, or weigh the evidence. Such matters are for the jury." State v. Cano, 191 Neb. 709, 217 N. W. 2d 480.

"In the absence of a legislative declaration to the contrary, a quantity with a potential for abuse is not an essential element of the offense of unlawful possession of a controlled substance." State v. McElroy, 189 Neb. 376, 202 N. W. 2d 752.

We believe the evidence is sufficient to sustain the verdict.

Should the evidence of the seizure of the controlled substance have been suppressed. In Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723, it was held that information received by a law officer was insuf-

ficient to justify issuance of a search warrant in the absence of disclosure of the informant's source of information. In the present case verification of the information received was sought by the officer and he observed the defendant driving by at the time and place specified by the informant.

In Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, an officer stopped and searched three men who appeared to be "casing a job, a stick-up." Defendant was prosecuted for carrying a concealed weapon. The court held the weapon was admissible in evidence and the search justified. The court stated that there is "no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails," and held that there must be present specific facts which taken together with rational inferences reasonably warrant the intrusion. Such facts were present in the case under consideration.

The case of Adams v. Williams, 407 U. S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612, presents facts pertaining to a stop practically identical to those in the case before us. The court stated: "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. * * * A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. * * *

"This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was 'immediately verifiable at the scene. * * * Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, * * * the information carried

enough indicia of reliability to justify the officer's forcible stop of Williams." See, also, United States v. Legato, 480 F. 2d 408 (5th Cir., 1973); United States v. Hernandez, 486 F. 2d 614 (7th Cir., 1973); State v. Micek, 193 Neb. 379, 227 N. W. 2d 409; State v. Brewer, 190 Neb. 667, 212 N. W. 2d 90.

It is evident that under the circumstances the officer was fully justified in stopping defendant and defendant does not contend that once the stop had been made and the officer had discovered a controlled substance lying in plain sight the arrest and seizure were improper.

The correction of the verdicts which the District Court required was not prejudicial to defendant. The jury had simply found him guilty of both the principal charge and a minor included charge. The court might well have simply ignored the verdict of guilty on the minor included charge but instead gave the defendant the opportunity to have both charges resubmitted with a view to having the jury choose between them.

The judgment of the District Court is affirmed.

AFFIRMED.